## Alexandria
## WADE WOODROW CARTER, JR.
## v.
## COMMONWEALTH OF VIRGINIA
No. 0818-88-4
Decided January 22, 1991

COUNSEL

Delmara F. Bayliss (Paul A. Morrison; Morrison, Bayliss & Briel, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a jury trial held on March 23 through 25, 1988, Wade Woodrow Carter, Jr., appellant, was convicted of one count of rape and two counts of forcible sodomy. The jury recommended that he be sentenced to three terms of forty years. The victim was Carter's six year old daughter. On appeal, Carter contends the trial court erred in denying defense counsels' motion for leave to withdraw after allegations of misconduct were levied against defense counsel by the Commonwealth's Attorney and acknowledged by the court.

This case was first brought to trial on March 8, 1988. Carter's attorneys at that time were Jerry Johnson and David Young. During that trial, defense counsel moved for a mistrial because the Commonwealth withheld material evidence. The court heard argument on the motion and granted it on March 14, 1988. A new jury trial was scheduled for March 23, 1988.

On March 18, 1988, prior to the second trial, the court held a hearing during which the following colloquy occurred:

The Court: Now . . . are you suggesting that defense counsel somehow engaged in some conduct which would require official censure by the Court or by a Bar Committee?

Mr. Forsyth [the prosecutor]: Based on what has been related to me by the mother, I am, sir.

The accusation centered on defense counsels' meetings and discussions with Nancy Carter, appellant's wife and the victim's mother, on March 17, 1988. Nancy Carter testified that Mr. Johnson and Mr. Young came uninvited to see her at her home three times and asked to speak with her alone. During those visits, Mr. Young and Mr. Johnson convinced Mrs. Carter to sign a release form giving them access to her daughter's psychological records. Mrs. Carter testified Mr. Johnson told her that if she did not sign the release her "husband could be walking the streets" and that it was up to her. She further testified that Mr. Johnson informed her that at the second trial he would be conducting the cross-examination of her and her daughter, and that it would be much harder than at the first trial. In addition, she stated that Mr. Johnson told her that if her daughter was not issued a subpoena, she could take her daughter out of the state and nobody could do anything about it. During the hearing, Nancy Carter also announced she no longer wished to speak with either of the defense counsel.

In an attempt to clarify Mrs. Carter's testimony and dispel alleged ethical violations on their part, Mr. Young and Mr. Johnson attempted to establish for the record their version of their conversations ·with Mrs. Carter. To do so, they cross-examined Mrs. Carter and had her admit she did not have a telephone, and so, they could not have called to forewarn her of their visits. She also conceded she never asked them to leave, and that they gave her another attorney's telephone number and suggested she seek independent legal advice.

On their own behalf, Mr. Young and Mr. Johnson described their account of what transpired that day. They stated they were seeking the release because the victim's psychologist would not discuss the case with them without it. Until the hearing, they viewed Mrs. Carter as a favorable witness. They asserted they

were not trying to suggest Mrs. Carter and her daughter should abscond from the jurisdiction. Instead, they were trying to explain to her the ramifications of being issued a subpoena and that they had obtained a subpoena for her as a defense witness. They also asserted that at no time did they intimate to Mrs. Carter that her husband would be walking the streets. Rather, they suggested to her just the opposite. Mr. Johnson and Mr. Young denied ever intentionally threatening Mrs. Carter or attempting to induce her to do anything she did not feel was in the best interests of her daughter or herself. Further, she signed the release on their final visit without hesitation. Thus, during the hearing, defense counsel were forced to contradict Mrs. Carter and thereby impeach her testimony.

Based on the testimony at the hearing, the trial judge informed Mrs. Carter that she did not have to speak with anyone she did not wish to and that she could tell defense counsel to leave her alone, except when she was in court. The trial judge assured her that defense counsel would not try to speak with her again and allowed her to revoke her release. Finally, without making any conclusions about the ethical conduct of defense counsel, the judge indicated that the prosecutor had the discretion to initiate a professional ethics complaint against defense counsel.

Following that hearing, Mr. Young and Mr. Johnson filed a motion to withdraw as counsel for Mr. Carter on March 21, 1988. In this motion, while again asserting that the prosecutor's allegations of misconduct were completely unfounded, counsel asserted they had been compelled to defend their own professional reputation and, thus, had not adequately represented their client at the hearing by failing to ensure that Mrs. Carter did not become a hostile witness and refuse to cooperate with them in preparation for trial. In addition, they contended the threat of an ethics disciplinary action created a conflict of interests between them and their client that "seriously compromised their ability to prepare the defendant's case and to be effective advocates and advisors on his behalf at the impending trial." The court denied the motion to withdraw, thereby requiring Mr. Young and Mr. Johnson to continue representing Mr. Carter through the second trial in which Carter was convicted on all three charges.

The transcript of that trial is not a part of the record on appeal. The record does contain an order dated April 14, 1988, which re-

flects that during the trial, in the absence of the jury, "[d]efense counsel moved the court to require the Commonwealth to state whether or not she would take any action against defense counsel concerning their conduct with a witness. The court denied the motion, stating that this issue had no relevancy to the trial of the defendant." Thus, the trial continued with the possibility that the prosecutor might ultimately decide to initiate an ethics complaint against defense counsel despite their assertions that this posture of the case created a conflict which prevented effective representation of their client.

The sixth amendment fundamental right to effective assistance of counsel is so basic to a fair trial that an infraction of that right can never be dismissed as harmless error. *See, e.g., Holloway v. Arkansas*, 435 U.S. 475, 489 (1978). In a case involving a defense counsel's conflict of interest, the evil "is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial" measures. *Holloway*, 435 U.S. at 490. Having recognized the potential for this concealed evil, the United States Supreme Court has held "that prejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *accord Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980). Hence, if the defendant shows that his counsel actively represented actual conflicting interests that adversely affected his counsel's performance, prejudice is presumed. *Strickland*, 466 U.S. at 692; *Cuyler*, 446 U.S. at 349-50.

Moreover, "if the possibility of a conflict of interest is apparent, a trial court has a duty to conduct further inquiry to determine if an actual conflict exists." *Dowell v. Commonwealth*, 3 Va. App. 555, 559, 351 S.E.2d 915, 917 (1987); *accord Wood v. Georgia*, 450 U.S. 261, 272 (1981). Therefore, "[w]here a probable risk of a conflict of interest is brought to a trial court's attention, the trial judge must take adequate steps to ascertain the extent of a conflict of interest." *Dowell*, 3 Va. App. at 561, 351 S.E.2d at 918; *accord Cuyler*, 446 U.S. at 347; *Holloway*, 435 U.S. at 484. "[W]here a trial court fails to initiate an inquiry when it knows or reasonably should know that a particular conflict may exist it is presumed that the conflict resulted in ineffective assistance of counsel." *Dowell*, 3 Va. App. at 561, 351 S.E.2d at 918; *accord Cuyler*, 446 U.S. at 348; *Holloway*, 435 U.S. at 484;

*see Strickland*, 466 U.S. at 692.

In this case, the testimony produced at the March 18, 1988 pretrial hearing concerned, in pertinent part, the prosecutor's allegation of professional misconduct by defense counsel toward the witness, Mrs. Carter. This testimony formed the basis of counsels' subsequent assertion, in their motion to withdraw as counsel, of a conflict of interest which would prevent effective representation of the accused. Thus, when the motion was filed, the trial judge knew or should have known that a possible conflict of interest existed. While we refrain from deciding whether an actual conflict of interest existed, we do find that a potential conflict of interest clearly existed. Defense counsel were left to defend their client after the prosecutor had alleged professional misconduct on their part and the trial judge had made no finding clearing them of misconduct. Moreover, defense counsel filed a motion to withdraw specifically alleging that their ability to defend their client had been seriously compromised. Finally, during the trial, counsel filed a motion to require the prosecutor to state whether any action would be taken. Thus, counsel were required to conduct an effective defense of the accused in an atmosphere where a potential defense witness possibly had been compromised, where the prosecutor had made allegations of misconduct and still held open the possibility of bringing ethical charges, and where the trial judge declared in open court that the prosecutor had the discretion to bring those charges.

In our view, the trial judge erred in failing to conduct an inquiry to determine the extent and effect of the alleged conflict of interest raised in defense counsels' motion to withdraw. If that inquiry led to a determination that a conflict existed which prevented effective representation of the accused, the motion should have been granted. Moreover, such a determination would necessarily lead to the conclusion that Carter's sixth amendment right to effective assistance of counsel was violated. Accordingly, the convictions are vacated and we remand this case to the trial court to determine whether a conflict of interest existed which denied Carter's right to effective assistance of counsel. If so, a new trial must be granted.

*Vacated and remanded.*

Barrow, J., and Duff, J., concurred.