## Alexandria

WADE WOODROW CARTER, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1073-91-4

No. 1576-91-4

Decided March 9, 1993

COUNSEL

Paul A. Morrison (Delmaria F. Bayliss; Morrison, Bayliss & Briel, on briefs), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on briefs), for appellee.

OPINION

**COLEMAN, J.**—Wade Woodrow Carter Jr., was convicted by a jury of one count of rape and two counts of forcible sodomy of his six-year-old daughter. He appealed the convictions. At the petition stage, a panel of this Court granted an appeal on the issue whether defense counsel had a conflict of interest, but refused to consider the merits of five other issues because a trial transcript, which the panel deemed indispensable to appellate review of those issues, had not been timely filed in accordance with Rule 5A:8. On appeal, another panel of this Court vacated the convictions and remanded the case for the trial judge to conduct an evidentiary hearing to determine whether defense counsel had a conflict of interest, thereby denying Carter his Sixth Amendment right to effective assistance of counsel. *See Carter v. Commonwealth*, 11 Va. App. 569, 574, 400 S.E.2d 540, 543 (1991). On remand, the trial judge, after receiving evidence from trial counsel, ruled that counsel had no conflict of interest and that Carter had not been denied effective assistance of counsel. Thus, in accordance with our instructions in the previous appeal, the trial judge reinstated Carter's convictions.

Carter has now been granted another appeal from the remand proceedings in which the trial court found no conflict of interest. He raises on this appeal the propriety of the previous merit panel's decision to remand the case to the trial court and the trial court's finding that defense counsel had no conflict of interest. Carter also has been granted an appeal on the issue whether we should reconsider the decision by the first writ panel to deny an appeal and merits review of the five other issues.[1] Although counsel appealed to the Supreme Court the first writ panel's decision to deny a merits review of those five

---

[1] The second writ panel's decision to grant an appeal on this question did not, of course, represent a merits determination that the issue was properly before the Court.

issues,[2] the Supreme Court transferred the petition for appeal on those issues to the Court of Appeals because the appeal and aspects of it were still pending before this Court during the remand hearing.

We will not review the first writ panel's decision, which held that we are precluded by Rule 5A:8 and the holding of *Turner v. Commonwealth*, 2 Va. App. 96, 341 S.E.2d 400 (1986), from considering an issue for which a transcript of the proceedings has not been timely filed and the transcript is indispensable to an understanding of the facts and to appellate review. As to the transfer from the Supreme Court of the issue whether the writ panel ruled correctly in dismissing the appeal as to certain issues because the transcript was not timely filed, the first petition panel's decision was final, and, having been timely appealed to the Supreme Court and transferred by them to us pending resolution of the appeal before us, the appeal of those issues remains viable and shall be re-transferred by the Clerk of the Court of Appeals to the Supreme Court, at such time that this appeal becomes final. Likewise, we will not review the first merit panel's decision in *Carter*, 11 Va. App. at 574, 400 S.E.2d at 543, to remand for an evidentiary hearing on the issue whether counsel had a conflict. The decision of that panel to remand has become the law of the case, and we are bound by that decision. *See Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 621-22, 93 S.E. 684, 687 (1917); *Kaufman v. Kaufman*, 12 Va. App. 1200, 1208, 409 S.E.2d 1, 6 (1991). Finally, we find no error in the trial court's ruling that Carter's trial counsel had no conflict of interest. Thus, we affirm the trial judge's reinstatement of Carter's convictions and sentences.

Wade Carter was charged with crimes of having sexually abused his six-year-old daughter in the summer of 1987. His first trial resulted in a mistrial. Before the second trial, the assistant Commonwealth's attorney accused the two defense attorneys of misconduct for allegedly harassing Nancy Carter, the victim's mother and defendant's wife, by pressuring her to provide them with a signed release to obtain her daughter's psychological records. The day after Nancy Carter signed the release, she orally revoked it. A hearing was convened, at which defense counsel was prepared to address whether Nancy Carter had effectively and validly revoked the signed records release form. Instead, the hearing focused upon the Commonwealth's attorney's allegation that counsel had harassed Nancy Carter. Nancy Carter testified

---

[2] Carter did not appeal the ruling by the first merit panel to remand, rather than dismiss, the convictions.

at the hearing. She was examined by both the assistant Commonwealth's attorney and the defense attorneys. According to defense counsel, they asked Nancy Carter at the hearing about her complaints and their conduct toward her on the day that they requested the psychological records release, rather than asking her why she revoked the release the following day, as they had originally planned. Both defense attorneys testified at the remand hearing that they were so preoccupied at the pretrial hearing with the Commonwealth's allegations of professional misconduct that they failed to use that opportunity to discover why Nancy Carter revoked the records release and whether it was because the records may have contained exculpatory evidence.

At the pretrial hearing, the judge did not rule on whether defense counsel acted improperly toward Nancy Carter. The judge told the assistant Commonwealth's attorney that he could initiate whatever disciplinary action he deemed appropriate. The trial judge determined that Nancy Carter did not wish to have further contact with the defense attorneys. Therefore, the judge advised her that she was not obligated to speak to anyone.

The day after the hearing, the defense attorneys filed a Motion for Leave to Withdraw, asserting that a conflict of interest had arisen that forced them to protect their own interests instead of the defendant's. Defense counsel stated that the assistant Commonwealth's attorney's threat of initiating disciplinary action would hamper their ability properly to defend their client. Without hearing additional evidence or making further inquiry, the trial judge denied defense counsel's motion to withdraw.

At trial, defense counsel called Nancy Carter as a defense witness. Before their examination of her, one of the attorneys consulted with her about her testimony. However, according to defense counsel, they limited their examination of her because they feared that they would appear to be harassing her on the stand. They testified that they only asked her the same questions that they had asked at the first trial, without pursuing any new defenses or lines of questioning. Specifically, they refrained from asking Nancy Carter why she had revoked the release for them to obtain her daughter's psychological records or whether the Department of Social Services (DSS) had persuaded her to bring what she believed to be unfounded charges against her husband.

After Carter was convicted of rape and two counts of sodomy, the trial court appointed other counsel to appeal because the issues would include whether trial counsel had a conflict of interest.

Carter first contends that the Court of Appeals incorrectly remanded the case to the trial court for a hearing on the existence of a conflict of interest. He argues that this Court should have vacated the conviction and remanded the case for a new trial. This Court has decided that issue. Carter did not request a rehearing pursuant to Rule 5A:33 on the decision to remand. We will not reconsider or review a decision that was rendered by another panel of this Court. *Id.*

Similarly, with respect to Carter's contention that this Court incorrectly determined that the trial transcript was not timely filed, a panel of this Court has decided that issue. Carter contested that decision by requesting a rehearing pursuant to Rule 5A:15. Upon rehearing, the panel affirmed its decision that the trial transcript was not timely filed. The panel's decision is binding and is not subject to review and reconsideration by this panel. *Id.*

We turn to Carter's final contention that the trial judge erred in finding that his attorneys had no conflict of interest that denied him his Sixth Amendment right to effective assistance of counsel. In order to prove ineffective assistance of counsel, a defendant must demonstrate that his attorney's conduct fell below an objective standard of reasonableness, and that but for this deficient conduct the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Prejudice against a defendant's case is presumed when "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Credible evidence supported the trial judge's underlying factual determinations and legal conclusions that no conflict of interest existed. We will not disturb the factual finding in the absence of plain error. Code § 8.01-680.

Carter contends that a conflict of interest existed because, although the prosecutor did not actually file formal charges of an ethical violation, the threat of disciplinary action against his attorneys created such a conflict. The attorneys perceived that they needed to compromise their investigation and examination of Nancy Carter, a material witness, in order to avoid having an ethics complaint filed and to protect

their own professional careers. Thus, because of the threat of disciplinary action against the attorneys, they protected themselves at the expense of conducting an adequate defense for Carter. Carter contends that he has demonstrated that his defense was prejudiced by his attorneys' ineffectiveness in failing to ask relevant questions of Nancy Carter to ascertain why she revoked her consent to obtain the victim's psychological records and whether DSS had encouraged her to file a spurious complaint.

(2) "An actual conflict of interest exists when an attorney engages in wrongful conduct related to the client's trial." *United States v. Jones*, 900 F.2d 512, 519 (2d Cir.), *cert. denied*, 498 U.S. 846 (1990); *see United States v. Arrington*, 867 F.2d 122, 125 (2d Cir.), *cert. denied*, 493 U.S. 817 (1989); *Solina v. United States*, 709 F.2d 160, 164 (2d Cir. 1983). When an attorney has, in fact, engaged in wrongful conduct related to his client's cause, the fear that such wrongdoing may be disclosed would constitute a conflict of interest that would preclude a vigorous defense on the client's behalf. *Jones*, 900 F.2d at 519. However, even when a formal complaint alleging an ethical violation has been filed against an attorney during trial, even when filed by the defendant, courts have declined to find a *per se* conflict of interest. *See People v. Allen*, 220 Ill. App. 3d 772, 782, 580 N.E.2d 1291, 1298 (1991); *United States v. Contractor*, 926 F.2d 128, 134 (2d Cir.), *cert. denied*, 502 U.S. 838 (1991) (defendant filing complaint with the bar association against his attorney did not constitute a conflict of interest); *United States v. Mouzin*, 785 F.2d 682, 697 (9th Cir.), *cert. denied*, 479 U.S. 985 (1986) ("[T]he infliction of discipline upon an attorney previously qualified and in good standing will not and should not transform his services into ineffective assistance"). "Allegations of wrongdoing alone cannot rise to the level of an actual conflict unless the charges have some foundation." *Jones*, 900 F.2d at 519. Thus, if the filing of a formal ethics complaint does not *per se* create a conflict of interest, it follows that the threats or fear that disciplinary action possibly may be filed does not *per se* create an actual conflict of interest. In either instance, the defendant must prove that actual wrongdoing by counsel occurred and that counsel's fear of disclosure of the wrongdoing caused counsel to be ineffective in a manner that prejudiced the trial result.

No factual basis supports Carter's argument that his attorneys had a conflict of interest. The judge and prosecutor in Carter's case knew of the complaint by Nancy Carter that defense counsel had harassed her.

The prosecutor alerted the judge to the perceived misconduct, and the issue was addressed at the hearing that was convened for the purpose of considering whether Nancy Carter had revoked the records release that she had given defense counsel. At the hearing, Nancy Carter and the defense attorneys recounted the entire incident surrounding the request for the records release that gave rise to the prosecutor's accusations of ethical misconduct. Any misconduct that may have occurred, insofar as the record then indicated, had been disclosed prior to trial and so could not have been a conflict of interest that impeded counsel in their representation of their client. Defense counsel maintained at the pretrial hearing and at the remand hearing that they were not guilty of any misconduct in their interviewing Nancy Carter and obtaining a release from her. No proof exists of any undisclosed misconduct by defense counsel that constituted a conflict of interest that prevented them from vigorously defending their client.

Carter's attorneys testified at the remand conflict of interest hearing that they did not question the witness Nancy Carter as thoroughly as they had wanted to at trial because they were concerned that a rigorous examination would provoke the prosecutor into filing formal disciplinary charges against them. They also testified that they had intended to explore a new theory that DSS had pressured Nancy Carter into bringing unsubstantiated charges against the defendant. They also believed that DSS had persuaded Nancy Carter to withdraw the medical release because the psychological records may have contained exculpatory information about the defendant. The defense attorneys concluded, however, that questioning Nancy Carter at trial about DSS and the medical release created the risk that Nancy Carter would mention in court their alleged harassment of her on the day that they requested the release.

The fact that defense counsel chose to limit their examination of Nancy Carter at trial and not to confront her was not based upon a conflict of interest, but rather was done to avoid the appearance of being hostile toward the witness or to avoid the consequences at trial that the prosecutor or judge might question the propriety of their action before the jury. Even if the latter motivated counsel to limit their examination, no actual conflict of interest existed if the allegations of misconduct had no basis in fact. The fact that the prosecutor had raised a specter of possible prior misconduct by defense counsel did not preclude or prevent examining Nancy Carter in an appropriate manner on any issue necessary for Carter's defense. *See Jones*, 900

F.2d at 519. Defense counsel could conduct their examination of Nancy Carter at trial in an ethical manner and within the bounds of proper trial decorum despite the prosecutor's unfounded threat of an ethics complaint. There is no evidence that defense counsel feared that Nancy Carter would reveal incriminating evidence against them beyond that conduct previously disclosed.

In the absence of proof that actual wrongdoing occurred and that fear of disclosure of that actual wrongdoing prevented effective cross-examination, we must reject defendant's claim. If defense counsels' cross-examination was adversely affected, it was not the result of a conflict of interest. Any limitation on the examination of Nancy Carter, who was a witness favorable to the defense, was a decision of trial tactics and was not the result of a conflict of interest that resulted in ineffective assistance by counsel.

Accordingly, we find that the evidence supports the trial court's determination that defense counsel had no conflict of interest that rendered their representation of Carter ineffective. For this reason, we affirm the trial court's reinstatement of Carter's convictions.

*Affirmed.*

Baker, J., and Fitzpatrick, J., concurred.